# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLES RICHARD ALSOP GILBERT, JR., BURGANDY PARK ASSOCIATES, LLC, INDOOR RANGE OPERATING COMPANY, LLC, *trading as* GILBERT'S INDOOR RANGE, BRYON GOSSARD, and GILBERT INDOOR RANGE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, THE UNITED STATES OF AMERICA, GRETCHEN ARLINGTON, *in her official capacity and personal capacity*, ENGAGE ARMAMENT, THEODORE SABATE, ANDREW RAYMOND and GREG MILLER, <br><br> Defendants. | Civil Action No. TDC-15-2127 |

**MEMORANDUM OPINION**

The Gun Control Act of 1968 ("GCA"), Pub. L. No. 90–618, 82 Stat. 1213 (1968), requires any individual seeking to engage in the business of selling firearms to first obtain a Federal Firearms License ("FFL") from the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). 18 U.S.C. § 923(a) (2012). Plaintiffs Charles Gilbert and Bryon Gossard, along with limited liability corporations established to operate their various businesses, have filed suit seeking damages for and injunctive relief relating to the ATF's denial of Gossard's FFL application. Plaintiffs assert a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and multiple state law tort claims. Pending before

the Court are two Motions to Dismiss, one by Defendants the United States of America, the ATF, and Gretchen Arlington, an ATF investigator (the "Federal Defendants"), and one by Defendants Engage Armament and Andrew Raymond (the "Private Defendants"). Having reviewed the pleadings, briefs, and other submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions are GRANTED.

## BACKGROUND

Gilbert is the owner of the Gilbert Indoor Range (the "Range"), a members-only shooting range located in Rockville, Maryland. Gilbert is also a former FFL holder whose many GCA violations cost him the ability to sell firearms. His decade-long attempt to regain an FFL, either for himself or for a proxy, is recounted in detail in *Gossard v. Fronczak*, 206 F. Supp. 3d 1053, 1055–56 (D. Md. 2016). This case is one of a long line of legal challenges brought by Gilbert in an effort to resuscitate his former firearms dealing business.

In 2008, in an attempt to maneuver around firearms regulations and the ATF's rescission of his businesses' FFLs, Gilbert entered into an agreement with Defendants Raymond and Theodore Sabate, who together owned Engage Armament LLC ("Engage"), a business that customized and sold firearms. Through this agreement, Gilbert would finance the purchase of a firearm for a Range member, then Engage would use its FFL to receive the firearm from the manufacturer or dealer and to host the actual sale of the firearm on its premises. For its participation, Engage would receive a $30.00 transfer fee. Gilbert would receive the rest of the profits. Gilbert also offered a free, week-long membership to the Range to any person who purchased a firearm from Engage.

Meanwhile, also in 2008, Gilbert applied for an FFL in his own name. The ATF denied the application, finding that his businesses' GCA violations should be imputed to him and that Gilbert himself had violated the GCA by selling firearms after his businesses' FFLs had been revoked. *Gossard*, 206 F. Supp. 3d at 1056. On June 6, 2012, the United States Court of Appeals for the Fourth Circuit affirmed ATF's decision. *Gilbert v. Bangs*, 481 F. App'x 52, 55 (4th Cir. 2012).

In April 2012, Plaintiff Gossard purchased one of Gilbert's business entities, Gilbert Indoor Range, LLC ("GIR"), for one dollar. *Gossard*, 206 F. Supp. 3d at 1056. Gossard, who had been a Range employee since 2009, also entered into a lease so that GIR could sell firearms at the Range. Two days after the Fourth Circuit affirmed ATF's denial of Gilbert's FFL application, Gossard applied for an FFL on behalf of GIR.

FFL applicants must list on their application all "responsible persons" in their business. Specifically, they must notify the ATF of "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms." *Gossard*, 206 F. Supp. 3d at 1061 (quoting FFL Application Instructions). Willful failure to list a responsible person is grounds for the application's denial. 18 U.S.C. § 923(d)(1)(D); 27 C.F.R. § 478.47(b)(4) (2016); *see Mew Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 678 (N.D. W. Va. 2014). Gossard's FFL application did not name Gilbert as a responsible person for GIR.

Defendant Arlington was the ATF Industry Operations Investigator charged with investigating Gossard's application. On November 16, 2012, she gave what Gossard thought was verbal approval of the application. Gossard immediately alerted the Range's customers that

3

he was now able to sell firearms. He also told Raymond about the FFL approval. Plaintiffs have not alleged that they expended any money or entered into any transactions based on Arlington's statement.

The anticipated FFL approval was not forthcoming. The same day that Arlington spoke with Gossard, Raymond contacted ATF to accuse Gossard of being a straw applicant for Gilbert and a marijuana user. Ultimately, on August 26, 2013, ATF denied Gossard's application on the grounds that he had not disclosed Gilbert as a responsible person and had engaged in unlawful drug use. *Gossard*, 206 F. Supp. 3d at 1058. "Immediately after" Gossard received the denial, Raymond contacted Gilbert, informed him of Gossard's alleged drug use, and admitted that it was he who had spoken to ATF about Gossard's application. Am. Compl. ¶ 78, ECF No. 56-1. "It was at this time" that Gilbert "realized" that Raymond, Sabate, Engage, and ATF were conspiring against him. *Id.* ¶ 79.

Gossard appealed the denial of his FFL application. After an administrative hearing, ATF issued a Final Notice affirming its decision on January 20, 2015. On March 24, 2015, Gossard filed a petition in this Court to contest that decision. On June 30, 2016, this Court upheld the ATF's denial of the application on the basis that Gossard had willfully omitted material information from his application. *Gossard*, 206 F. Supp. 3d at 1065. Specifically, this Court found that Gossard should have listed Gilbert as a "responsible person" for Gossard's business because "Gilbert could indirectly control the management, policies, and practices of GIR." *Id.* at 1063–65. This Court reached this conclusion without considering whether Gossard was a drug user or whether alleged drug use was a proper basis for the FFL's denial. On November 13, 2017, the Fourth Circuit affirmed this Court's decision. *Gossard v. Fronczak*, 701 F. App'x 266, 266 (4th Cir. 2017).

On July 21, 2015, while Gossard's challenge was still pending before this Court, Gossard and Gilbert filed this case. The initial Complaint (the "original Complaint") listed only the United States and the Acting Director of ATF as defendants and asserted two claims: a governmental taking of property in violation of the Fifth Amendment and the tort claim of intentional interference with current and prospective business advantage/contract. The Takings Clause claim was later voluntarily dismissed. On January 18, 2017, Plaintiffs amended their Complaint (the "First Amended Complaint") to add Arlington, in her official and personal capacities, Engage, Raymond, Sabate, and Greg Miller as defendants.[1] The First Amended Complaint also substituted ATF itself in place of its Acting Director.

The Complaint was amended yet again on May 3, 2017 (the "Second Amended Complaint") to add four additional claims: a Fifth Amendment due process violation, brought pursuant to 42 U.S.C. § 1983 ("§ 1983"), and three state law tort claims: unjust enrichment, intentional misrepresentation, and constructive fraud. As relevant here, Plaintiffs allege that Arlington, Raymond, Sabate, and Miller conspired to use Raymond's false testimony to deny an FFL to Gossard so that Raymond and Engage could steal Gilbert's customer base and benefit from the lucrative business of selling firearms without competition from Gossard. Plaintiffs allege that Gossard and Gilbert both lost potential revenue because Gossard never received an FFL and therefore could not sell firearms for profit, and Gilbert was thus deprived of rent that GIR would have paid for leasing space at the Range.

---

[1] Plaintiffs failed to serve Miller, resulting in the dismissal of the claims against him. ECF No. 96. Because Sabate is in bankruptcy proceedings, all claims against him are subject to an automatic stay. *See* Suggestion of Bankruptcy, ECF No. 70; 11 U.S.C. § 362 (2012).

## DISCUSSION

The Federal Defendants seek dismissal of all counts asserted against them on the grounds that those claims are barred by sovereign immunity or are foreclosed by this Court's ruling in *Gossard v. Fronczak*, 206 F. Supp. 3d at 1063–65. The Private Defendants seek dismissal on the grounds that (1) they are not state actors, such that the *Bivens* and § 1983 claims against them are improper; and (2) the remaining tort claims are barred by the statute of limitations.

## I. Legal Standard

Defendants seek dismissal of the tort claims against Arlington under Federal Rule of Civil Procedure 12(b)(1). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Defendants seek dismissal of the remaining claims pursuant to Rule 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions or conclusory statements do not suffice. *Id*. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Documents attached to the complaint or motion may be considered if "they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). When considering a Rule 12(b)(6) motion based on *res judicata* or *collateral estoppel*, the courts may "take judicial notice of facts from a prior judicial proceeding" when the assertion of preclusion as a defense "raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

## II.  Federal Defendants

### A. Tort Claims

Plaintiffs have asserted three state law tort claims against Arlington: intentional interference with current and prospective business advantage/contract, intentional misrepresentation; and constructive fraud. Although the claim for interference with business advantage/contract is framed as a claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), that characterization is improper. In *Bivens*, the United States Supreme

7

Court recognized that plaintiffs whose constitutional rights are violated by federal officers have an implied cause of action against those officers. *Id*. at 397. In the decades since, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). *Bivens* thus provides no protection for rights secured by statute or common law. *Id.* at 70 ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). The Court therefore construes all of these claims as traditional state law tort claims asserted against Arlington.

The Federal Tort Claims Act ("FTCA") immunizes federal employees for "negligent or wrongful act[s] or omission[s]" committed "while acting within the scope of [their] office or employment." 28 U.S.C. § 2679(b)(1) (2012); *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997). When federal employees are sued, the Attorney General, through the relevant United States Attorney, issues a certification stating whether they were acting within the scope of their employment when the allegedly tortious acts occurred. *See* 28 U.S.C. § 2679(d); *Maron*, 126 F.3d at 321. The United States is then "substituted as the sole defendant," and "the plaintiff's sole route for recovery is the [FTCA]." *Id*. Plaintiffs may challenge the government's certification, but they bear the burden to show that the federal employee was acting outside the scope of employment under the law of the state in which the alleged tort occurred. *Id.* at 323–24.

The government has filed such a certification on Arlington's behalf. Certification, ECF No. 97-1. Plaintiffs have not challenged the certification. Even if they had, the Court finds that the factual allegations in the Second Amended Complaint support only the conclusion that Arlington acted within the scope of her employment under Maryland law.

"The general test set forth in numerous Maryland cases for determining if an employee's tortious acts were within the scope of . . . employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Larsen v. Chinwuba*, 832 A.2d 193, 200 (Md. 2003) (quoting *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991)). "Authorized" does not refer to "authority expressly conferred," but to "whether the act was such as was incident to the performance of the duties entrusted . . . even though in opposition to [the employer's] express and positive orders." *Id.* (quoting *Hopkins C. Co. v. Read Drug & C. Co.*, 92 A. 478, 479–80 (Md. 1914)). The fact that the employee's alleged acts were wrongful is not, alone, sufficient to show that they were conducted outside the scope of employment, because if courts were to "separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—[they] would effectively emasculate the immunity defense." *Maron*, 126 F.3d at 325 (quoting *Johnson v. Carter*, 983 F.2d 1316, 1323 (4th Cir. 1993)). Plaintiffs have alleged that Arlington's tortious acts occurred while she was investigating Gossard's FFL application, and that she acted with the purpose of preventing Gossard from receiving an FFL. Moreover, ATF assigned this investigation to Arlington, and any allegedly wrongful conduct happened as she was pursuing this investigation or submitting her findings from it. The factual allegations in the Complaint therefore show that Arlington was acting within the scope of her employment with ATF. The United States will therefore be substituted for Arlington.

Absent a statutory waiver, the United States is shielded from suit for a civil tort by sovereign immunity. *Kerns*, 585 F.3d at 193–94. The FTCA waives sovereign immunity for certain torts, provided that the claims are first filed administratively with the relevant agency within two years of the date the cause of action arises, and the civil action is then filed in federal

9

court within six months of the denial of the administrative claim by the agency. 28 U.S.C. § 2401(b). Failure to meet these requirements deprives a federal court of subject matter jurisdiction. *See Kokotis v. United States*, 223 F.3d 275, 278 (4th Cir. 2000) (stating that the timely filing of an administrative claim is a "key jurisdictional prerequisite"). As Plaintiffs have provided no basis to conclude that they submitted these tort claims to ATF, their claims were not administratively exhausted, and this Court lacks jurisdiction to hear these claims.

Furthermore, the FTCA does not waive sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, *deceit*, or *interference with contract rights*." 28 U.S.C. § 2680(h) (emphasis added); *see, e.g.*, *Ecco Plains, LLC v. United States*, 728 F.3d 1190, 1200 (10th Cir. 2013) (dismissing claim brought under the FTCA because it was grounded in interference with contract); *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 96 (3d Cir. 1995) ("[C]ourts have consistently held that fraud claims against the government are not permitted under the FTCA."); *Huff v. U.S. Dep't of the Army*, 508 F. Supp. 2d 459, 465 (D. Md. 2007) (dismissing the plaintiff's fraud claim because it was "grounded in the tort of misrepresentation"). Thus, even if Plaintiffs had satisfied the FTCA's administrative exhaustion requirement, the tort claims against Arlington, consisting of intentional interference with business advantage or contract, intentional misrepresentation, and constructive fraud, would still be barred. Plaintiffs' tort claims originally filed against Arlington will be dismissed.

### B. Due Process

Gossard has asserted a claim against Arlington under 42 U.S.C. § 1983, alleging that she violated his Fifth Amendment due process rights by providing ATF with false evidence about his drug usage and about Gilbert's role as a "responsible person" for GIR. The Federal Defendants

argue that this claim should be dismissed because this Court's earlier ruling in *Gossard v. Fronczak*, 206 F. Supp. 3d at 1053, precludes a finding that Arlington violated Gossard's constitutional rights.

First, Gossard cannot assert a § 1983 claim against Arlington because she is a federal employee. Section 1983 claims may be brought only against persons acting under color of the law of "any State or Territory or the District of Columbia." 42 U.S.C. § 1983; *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973). To bring a claim against a federal officer for violation of his due process rights, Gossard should have filed a *Bivens* action. *See Dunbar Corp. v. Lindsey*, 905 F.2d 754, 759–62 (4th Cir. 1990) (allowing a *Bivens* action for a plaintiff asserting that his property was taken by federal employees without due process). *But see Wilkie v. Robbins*, 551 U.S. 537, 549–50 (2007) (describing the limited reach of *Bivens* and declining to recognize *Bivens* actions for constitutional violations committed by federal actors when plaintiffs have an "alternative, existing process" by which to protect their interests). Gossard's § 1983 claim against Arlington will therefore be dismissed.

Second, this deficiency is not correctable. Even if Gossard were to amend his Complaint yet again and transform this count into a *Bivens* claim, the amendment would be futile because this Court's prior ruling in *Gossard* precludes the due process claim against Arlington.

Determining whether a plaintiff's due process rights have been violated is a two-step process. First, the court must determine "[w]hether any procedural protections are due" by deciding whether a "liberty or property" interest within the meaning of the Fifth Amendment's Due Process Clause is at stake. *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A government benefit, such as a license, confers a "'property' interest for due process purposes" if there are specific rules that claimants for that

11

benefit "may invoke at a hearing" where their entitlement to that benefit will be determined. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Second, should the Due Process Clause attach, the court determines "what process is due," keeping in mind that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey*, 408 U.S. at 481.

The GCA and the regulations promulgated under it prescribe the requirements for awarding or revoking FFLs, which include that applicants must receive a hearing if they request one and that applicants will have the opportunity to present evidence. *See* 18 U.S.C. § 923(c)–(f) (2012); 27 C.F.R. §§ 478.71–478.77. FFLs are therefore government benefits that can be "awarded or revoked according to 'rules . . . that [the holder or applicant] may invoke at a hearing,'" making them public entitlements that trigger due process protections. *Sovereign Guns, Inc. v. U.S. Dep't of Justice*, No: 5:16-CV-182-FL, 2016 WL 7187316, *4 (E.D.N.C. Dec. 9, 2016) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)); *see also Fulkerson v. Lynch*, 261 F. Supp. 3d 779, 786–87 (W.D. Ky. 2017); *Armament Servs. Int'l, Inc. v. Yates*, No. 17-MC-10, 2017 WL 5886048, *7–8 (E.D. Pa. Nov. 27, 2017); *DiMartino v. Buckles*, 129 F. Supp. 2d 824, 832 (D. Md. 2001). Having determined that the Due Process Clause applies, the Court now turns to whether Plaintiffs have stated a claim for a due process violation.

Gossard has made conclusory allegations that Arlington knowingly advanced false testimony about his drug usage and about Gilbert's role as a "responsible person" to cause ATF to deny Gossard's FFL application. It is doubtful that these general assertions meet the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009). Even assuming that they do, any due process claim would be foreclosed by the Court's earlier finding in *Gossard* that

Gossard's FFL application was properly denied based on evidence that Gilbert was a "responsible person," separate and apart from any statements offered by Raymond to Arlington, and that Gossard failed to identify him as such in the FFL application.

"Collateral estoppel" or "issue preclusion" prevents the re-litigation of issues of fact or law in order to promote judicial economy and to ensure the finality of judgments. It is an appropriate judicial policy because "a losing litigant deserves no rematch after a defeat fairly suffered." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). Applying collateral estoppel to preclude further litigation on a particular issue or fact requires that:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004).

In Gossard's earlier lawsuit before this Court challenging the ATF's denial of his FFL application, the Court necessarily and actually decided that ATF properly denied Gossard's FFL because, upon consideration of evidence separate and apart from any statements Raymond may have made to Arlington, "at a minimum, Gilbert could indirectly control the management, policies, and practices of GIR," which made him a "responsible person" whom Gossard should have listed on his application. *Gossard*, 206 F. Supp. 3d at 1063. Gossard had a full and fair opportunity to litigate this issue in the previous lawsuit, and he did so, ultimately appealing unsuccessfully to the Fourth Circuit. *Gossard*, 701 F. App'x at 266.

Based on this finding, Gossard cannot now succeed on a claim that the presentation of allegedly false evidence violated his due process rights. Such a claim would fail unless Gossard can establish that the alleged due process violation—the use of false testimony—caused him to

13

lose the benefit subject to due process protections, namely, the FFL. Such a causal link is a necessary element of the due process claim. *See Booth v. Maryland*, 337 F. App'x 301, 312–13 (4th Cir. 2009). In *Booth*, the court found that a due process claim based on false testimony would be futile because the testimony was "immaterial" to a prior determination that the plaintiff's termination was due to his own misconduct. *Id.*; *see Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (requiring a showing of prejudice to establish a due process violation). *Cf. Lane Hollow Coal v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 807–08 (4th Cir. 1998) (concluding that if a party has had a fair opportunity to be heard, transgressions such as suppressing exculpatory facts do not violate due process unless they render the result unfair); *United States v. Basham*, 789 F.3d 358, 376 (4th Cir. 2015) (holding that on a collateral attack, a criminal defendant asserting a due process violation must show a "reasonable probability" that the government's knowing use of false testimony "may have affected the verdict"). Here, the Court has already decided that, without consideration of the allegedly false evidence, Gossard's FFL application was properly denied based on Gilbert's role as a responsible person for GIR and Gossard's own failure to list him on the application. Where the allegedly false testimony was immaterial to the Court's prior determination that ATF properly denied Gossard's FFL application, Gossard cannot establish a due process violation. *See Booth*, 337 F. App'x at 307 (holding that collateral estoppel barred re-litigating the reason that the plaintiff was discharged because the determination that he was discharged for cause was made in a prior proceeding). Because collateral estoppel necessarily prevents Gossard from establishing the elements needed to succeed on his due process claim, the due process claim against Arlington, even if construed as a *Bivens* claim, will be dismissed.

### III. Private Defendants

#### A. *Bivens* Claim

Plaintiffs allege that Raymond conspired with Arlington to prevent Gossard from obtaining an FFL, thereby causing both Gilbert and Gossard to lose the revenue that they would have gained by selling firearms on Gilbert's premises. To recover damages for this loss, Plaintiffs have brought a *Bivens* claim against Raymond and Engage for the state law tort of intentional interference with business advantage or contract. The Private Defendants argue that this claim should be dismissed because they are not federal officers, and the claim does not assert any violation of the United States Constitution. They are correct.

As previously explained, under *Bivens*, plaintiffs have an implied cause of action against federal officers who have violated the plaintiffs' constitutional rights. 403 U.S. at 397. However, *Bivens* affords no protection for rights secured by statute or common law. *Malesko*, 534 U.S. at 68. *Bivens* actions also cannot be brought against private actors or corporations, even when they are so closely aligned with federal officers that it might be said that they are acting under color of federal law. *See Minneci v. Pollard*, 565 U.S. 118, 120, 126 (2012) (holding that there is no *Bivens* action against employees of a private company that operates a federal prison); *Malesko*, 534 U.S. at 71–72 (holding that there is no *Bivens* action against a private corporation operating a halfway house through a contract with the federal Bureau of Prisons); *Holly v. Scott*, 434 F.3d 287, 292–94 (4th Cir. 2006) ("Application of *Bivens* to private individuals simply does not find legislative sanction."); *see also O'Neil v. Anderson*, 372 F. App'x 400, 404 (4th Cir. 2010) (refusing to recognize a *Bivens* claim against a private contractor working in a federal prison). Intentional interference with business relations is a tort under Maryland law, *see Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003), and neither

15

Raymond nor Engage are federal officers. Therefore, no *Bivens* action for their allegedly tortious conduct is available, and this claim will be dismissed.

The Court notes that it would dismiss this claim even if it were construed as, or amended to be, a state law tort claim. As discussed above and in part III.B., all of the federal claims in the Amended Complaint will be dismissed. The Court will lack federal question jurisdiction over the state law tort claim for intentional interference with business advantage. *See* 28 U.S.C. § 1331. The Court will also lack diversity jurisdiction under which, as relevant here, there must be complete diversity in that no party on one side of a suit may be a citizen of the same state as a party on the other side. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). As alleged in the Second Amended Complaint, at least three of the plaintiffs and four of the defendants are Maryland citizens. Thus, the only way that this Court could maintain jurisdiction would be through supplemental jurisdiction. *See* 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Where, however, all claims arising under federal law have been dismissed, district courts have discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3); *Borzilleri v. Mosby*, 189 F. Supp. 3d 551, 563–64 (D. Md. 2016); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 499–500 (D. Md. 2005).

Here, the Court would decline to exercise supplemental jurisdiction. With the dismissal of all claims against the Federal Defendants, all remaining parties are Maryland residents, making litigation in state court neither inconvenient nor unfair. Questions of Maryland tort law, which are all that would remain, are best resolved by Maryland courts. And Plaintiffs would still be able to bring this claim in state court, without concern that it would now be time-barred as a

16

result of this Court's dismissal.[2] *See* Md. Rule 2-101(b) (providing that actions dismissed by a United States District Court may be filed in Maryland circuit court within 30 days of the dismissal order, and the action will not be deemed time-barred if it was timely filed in federal court). Thus, this claim will be dismissed regardless of whether it is construed as a *Bivens* claim or a state tort claim.

### B. Due Process

Gossard has also asserted a cause of action under 42 U.S.C. § 1983 against Raymond, alleging that Raymond violated his Fifth Amendment due process rights by providing false evidence to ATF. Raymond seeks dismissal of the § 1983 claim against him because he is not a state actor.

Gossard's § 1983 claim necessarily fails because Raymond was not a state actor when he supplied information to ATF. As discussed above, *see supra* part II.B., § 1983 protects individuals from deprivation of their federal rights by persons acting under color of the law of "any State or Territory or the District of Columbia." 42 U.S.C. § 1983; *Carter*, 409 U.S. at 424–25 (stating that § 1983 does not apply to federal officers). This claim will be dismissed because Gossard does not even allege that Raymond was acting under color of state law. Instead, he claims that Raymond conspired with a federal officer to deny Gossard an FFL.

Any attempted amendment would be futile. At best, this claim could be amended to assert it under *Bivens*, with the argument that Raymond was acting under color of federal law when he supplied the allegedly false information to the government. Such an amendment would not salvage the claim, because *Bivens* actions may only be brought against federal officers, and

---

[2] Because the Private Defendants did not assert a statute of limitations defense to this specific claim, the Court does not address whether this claim is already time-barred. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–54 (4th Cir. 2006) (stating that the statute of limitations is an affirmative defense which may be waived).

neither the Supreme Court nor the Fourth Circuit have recognized the possibility that private persons may be construed as federal actors for the purposes of *Bivens* liability. *See supra* part III.A.; *Minneci*, 565 U.S. at 120, 126; *Holly*, 434 F.3d at 292–94. This claim will therefore be dismissed.

C. **Tort Claims**

Finally, Plaintiffs assert that because Raymond allegedly gave false information to ATF, he and Engage are liable for unjust enrichment, intentional misrepresentation, and constructive fraud, all torts under Maryland law. The Private Defendants seek dismissal of these state law torts on the grounds that they are barred by the statute of limitations.

Maryland's three-year statute of limitations for civil actions applies to each of these torts. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2011); *Jason v. Nat'l Loan Recoveries, LLC*, 134 A.3d 421, 427–28 (Md. Ct. Spec. App. 2016) (unjust enrichment); *Moreland v. Aetna U.S. Healthcare, Inc.*, 831 A.2d 1091, 1094–95 (Md. Ct. Spec. App. 2003) (intentional misrepresentation); *Fairfax Sav., F.S.B. v. Weinberg & Green*, 685 A.2d 1189, 1204–06 (Md. Ct. Spec. App. 1996) (constructive fraud). Under Maryland's "discovery rule," this three-year period begins to run when the "plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 775 (Md. 2004) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (2000)). Motions to dismiss based on the argument that a claim is time-barred should not be granted "unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013).

According to the Second Amended Complaint, the Plaintiffs learned in August 2013 that Gossard's FFL application had been denied and that Raymond had told the ATF that Gossard

18

was a drug user.  Plaintiffs have acknowledged that once these events occurred, they knew or should have known of the Private Defendants' wrongful conduct.  *See* Mem. Opp. Mot. Dismiss at 10, ECF No. 87.  Plaintiffs therefore had three years from that date, or until August 2016, to file suit against Raymond and Engage.  However, the First Amended Complaint, which added Raymond, Engage, Sabate, and Miller as defendants, was not filed until January 18, 2017.  The Second Amended Complaint, in which these tort claims were asserted for the first time, was not submitted as part of a motion for leave to amend until April 5, 2017, and was not accepted by the Court until May 3, 2017.  Thus, based on the facts alleged in the Complaint, the tort claims are all time-barred.

In response, Plaintiffs argue that their claims are saved by the relation-back doctrine, through which later amendments to a complaint "relate back" to the date of the original complaint, in that they are treated as if they were filed with the initial complaint for the purpose of determining whether they were filed within the limitations period.  Generally, when an amended complaint adds a party, "if [the amendment] corrects the name of an original party, it relates back; if a new party is added, it does not relate back." *Williams v. Hofmann Balancing Techniques, Ltd*., 776 A.2d 4, 19 (Md. Ct. Spec. App. 2001).  The key is whether a newly joined party had notice within the limitations period of the lawsuit and that it would be a defendant. *Id*. at 19–20.

Here, the United States and the Acting Director of ATF were the only defendants named in the original Complaint.  That Complaint provided no indication that the Private Defendants would be joined as defendants to the litigation or that they would be the subject of the specific tort claims asserted.  Indeed, these tort claims—unjust enrichment, intentional misrepresentation, and constructive fraud—were not even part of this case when the Private Defendants were first

19

joined through the First Amended Complaint in January 2017. Plaintiffs asserted these tort claims for the first time in the Second Amended Complaint, filed on May 3, 2017, almost five months after Raymond and Engage were added to this lawsuit. Under these circumstances, particularly where the Private Defendants lacked notice that they would be defendants in this case until January 2017, the relation-back doctrine does not apply. Because Plaintiffs failed to file suit against the Private Defendants until more than three years after the state tort claims accrued, the tort claims are barred by the statute of limitations and will be dismissed.

## IV. Administrative Closure

For the same reasons that the Court will dismiss the claims against the Private Defendants, it appears that the claims against Sabate, the last remaining Defendant, would be subject to dismissal. Nevertheless, because Sabate is in bankruptcy proceedings, all claims against him are subject to the automatic stay. The case will therefore be administratively closed until the stay is lifted.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss are GRANTED. A separate Order shall issue.

Date: January 23, 2018

THEODORE D. CHUANG
United States District Judge